# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHARIFF BUTLER,

        Plaintiff,

   v.

JOHN E. WETZEL, *et al.*,

        Defendants.

No. 4:23-CV-00859

(Chief Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 13, 2024

Plaintiff Shariff Butler filed the instant *pro se* Section 1983[1] action, asserting alleged fire-safety issues at the State Correctional Institution, Huntingdon (SCI Huntingdon). Butler's amended complaint was dismissed in part for failure to state a claim upon which relief may be granted and he was provided limited leave to amend. Presently before the Court is Defendants' motion to dismiss Butler's second amended complaint. For the following reasons, the Court will grant in part and deny in part Defendants' motion.

## I.    BACKGROUND

Butler initially filed this case in May 2023.[2] After several improper attempts to amend his pleading as a matter of course (under the Federal Rules of Civil

---

[1]    42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]    *See generally* Doc. 1.

Procedure existing at that time),[3] he eventually filed an amended complaint in compliance with Federal Rule of Civil Procedure 15 on September 21, 2023.[4]

In his amended complaint, Butler principally alleged that SCI Huntingdon has inadequate fire-safety protections in place. He recounted that, on January 9, 2021, a fire broke out in a cell on his housing unit.[5] He averred that corrections officers tended to the fire but that, after they believed the fire had been extinguished, the unit became "engulfed in smoke" and the prisoners had to be evacuated off the unit and out of the prison.[6]

Following this incident, Butler filed a formal grievance in which he complained about numerous purported deficiencies with respect to SCI Huntingdon's fire-safety infrastructure and response.[7] He raised the following issues: (1) the length of the evacuation process; (2) no "initial sounding of any alarm" when the fire began; (3) no corrections officers "tending all tiers" at the time of the incident; (4) no "smoke exhaust fans" or "adequately operable ventilation system" in the housing unit; (5) no master locking system for all cells—each cell has to be individually, manually unlocked; (6) no "fire equipment" to tend to major fires; and (7) no "adequately operable fire exits."[8] Butler claimed

---

[3] *See* Docs. 4, 7, 14, 15. Butler also filed numerous motions for reconsideration and a motion for recusal. *See* Docs. 10, 16, 19, 25. Those motions were denied. *See* Docs. 11, 21, 22, 26.

[4] Doc. 23.

[5] *Id.* ¶ 14.

[6] *Id.* ¶¶ 14-15, 17-19.

[7] *Id.* ¶ 24; Doc. 23-11 at 2-3.

[8] Doc. 23 ¶ 24; Doc. 23-11 at 2-3; Doc. 44-11 at 2-3.

that these conditions "placed [his] life in immediate imminent danger" and constituted deliberate indifference, cruel and unusual punishment, and discriminatory treatment.[9] [10]

Butler appears to have pursued this grievance through final appeal with the Secretary's Office of Inmate Grievances and Appeals (SOIGA), and it was denied at all levels.[11] He additionally complained to the Pennsylvania Department of Labor and Industry and the Bureau of Occupational and Industry Safety, noting the same fire-safety issues raised in his grievance and contending that SCI Huntingdon does not comply with the "Fire and Panic Act, 35 Pa. Cons. Stat. §§ 1221-1235.1."[12] He averred that he did not receive a response from either agency.[13]

Butler named the following defendants: John E. Wetzel, former Secretary of the Pennsylvania Department of Corrections (DOC); Kevin Kauffman, former Superintendent of SCI Huntingdon; Corrections Officer C. Kendrick; Safety Manager Anthony Scalia; Unit Manager George Ralston; Corrections Officer

---

[9] Doc. 23-11 at 3; *see also* Doc. 23 ¶ 28.

[10] The Court observes that in Butler's own supporting documents attached to his first and second amended complaints, Safety Manager Anthony Scalia indicates that the evacuation took "approximately 6 minutes," "the institution's fire alarm system functioned exactly as it should have," and "the smoke exhaust system kicked on and expelled the majority of smoke from the housing unit within several minutes." Doc. 23-4 at 3; Doc. 44-2 at 3. These assertions directly contradict many of Butler's allegations regarding the conditions at SCI Huntingdon on January 9, 2021. Nevertheless, at the Rule 12(b)(6) stage, Butler's allegations are taken as true.

[11] Doc. 23-11 at 4-10.

[12] Doc. 23 ¶¶ 29-30; Doc. 23-5; Doc. 23-6; Doc. 23-7. Butler alleged that the "Fire and Panic Act" is now known as the "Life Safety Code Act," but does not provide an accurate statutory or code citation. *See* Doc. 23 ¶ 11.

[13] Doc. 23 ¶ 31.

Jennifer Jenkins; and the Pennsylvania Department of Labor and Industry.[14]  Butler also appeared to sue Chief Grievance Officer Dorina Varner and Assistant Chief Grievance Officer Keri Moore, although Varner and Moore were listed only in the caption and did not appear in the defendant-identification section of the amended complaint.[15]

Butler asserted four causes of action: (1) Section 1983 Eighth Amendment deliberate indifference; (2) Section 1983 Fourteenth Amendment equal protection; (3) civil conspiracy to violate constitutional rights, presumably under Section 1983; and (4) state-law negligence.[16]  He requested declaratory and injunctive relief, as well as nominal, compensatory, and punitive damages.[17]

Defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Butler had failed to state a claim upon which relief may be granted.[18]  After Defendants filed their brief in support, Butler moved for an extension of time to file his brief in opposition.[19]  The Court

---

[14]   *Id.* ¶¶ 5-11.

[15]   *Compare id.* ¶¶ 5-11, *with id.* at p. 1.

[16]   *See* Doc. 23 ¶¶ 53-70.

[17]   *Id.* at pp. 21-22.  Butler also asserted that he was seeking "immediate release" from custody, but such claims sound in habeas corpus, not Section 1983 liability.  *See, e.g.*, *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323-25 (3d Cir. 2020) (explaining that detainees seeking "release from detention" may proceed by way of a habeas petition challenging unconstitutional conditions of confinement, but only in "extraordinary circumstances").  The Court additionally observes that, although Butler's amended complaint sought money damages for mental and emotional injury, his alleged physical injury of short-term smoke inhalation (without any lasting effect) does not appear to rise above the *de minimis* level, as required by 42 U.S.C. § 1997e(e).  *See Mitchell v. Horn*, 318 F.3d 523, 535-36 (3d Cir. 2003).

[18]   *See generally* Doc. 24.

[19]   *See* Doc. 28.

granted that motion, giving Butler until November 14, 2023, to file his opposition brief.[20] Instead of filing a brief in opposition, Butler moved to stay the case.[21] The Court denied that motion.[22] Butler never filed a brief in opposition, so Defendants' motion to dismiss was deemed unopposed.[23] Despite the motion being unopposed, the Court still reviewed the sufficiency of Butler's amended complaint to determine if any of his claims could survive Rule 12(b)(6) scrutiny.[24]

The Court first found that Butler had failed to plead personal involvement for Wetzel, Ralston, Moore, Varner, and Jenkins, and accordingly dismissed the Section 1983 claims against those Defendants.[25] The Court then explained that, as to his Eighth Amendment claim, Butler had only plausibly alleged "knowledge of the risk of harm and deliberate indifference thereto" for two defendants: Superintendent Kauffman and Safety Manager Scalia.[26] Next, the Court dismissed Butler's Fourteenth Amendment equal protection claim, finding that he had not alleged that he was discriminated against based on membership in a protected class, nor did he allege that he was arbitrarily treated differently than other similarly situated inmates at SCI Huntingdon.[27] As to Butler's Section 1983 civil

---

[20] *See* Doc. 29.
[21] Doc. 30.
[22] Doc. 31.
[23] *See* Doc. 36 at 5; LOCAL RULE OF COURT 7.6.
[24] *See generally* Doc. 36.
[25] *Id.* at 7-9.
[26] *Id.* at 10-12.
[27] *Id.* at 12-13.

conspiracy claim, that claim failed because Butler had not plausibly alleged facts (rather than mere legal conclusions) that would establish a conspiracy among Defendants.[28]  Butler's state-law negligence claims were determined to be barred by state statutory sovereign immunity.[29]  Finally, Butler's Section 1983 claims against the Department of Labor and Industry were dismissed because that state agency was not a "person" for Section 1983 purposes and also because such claims are barred by Eleventh Amendment sovereign immunity.[30]

Butler was given limited leave to amend and specific directions for amendment.[31]  His claims against Ralston, Varner, and Moore were dismissed with prejudice because those Defendants were only involved with the review and denial of Butler's grievance and appeals.[32]  His Section 1983 claim against the Department of Labor and Industry was likewise dismissed with prejudice because leave to amend would be futile.[33]  Lastly, leave to amend his state-law negligence claims was also denied as futile, as those claims were plainly barred by state statutory sovereign immunity.[34]

---

[28]  *Id.* at 14-15.
[29]  *Id.* at 15-16.
[30]  *Id.* at 16-17.
[31]  *Id.* at 17-18.
[32]  *Id.* (citations omitted); *see also* Doc. 37 ¶ 1(b), (d), (f).
[33]  *See* Doc. 36 at 18; Doc. 37 ¶ 1(b), (d), (f).
[34]  *See* Doc. 36 at 18; Doc. 37 ¶ 1(g).

Butler timely filed a second amended complaint.[35]  Defendants now move to dismiss that pleading for failure to state a claim upon which relief may be granted.[36]  Defendants' Rule 12(b)(6) motion is fully briefed and ripe for review.

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[37]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[38]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[39]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[40]  At step one, the court must "tak[e] note of the elements [the]

---

[35]  Doc. 44.
[36]  Doc. 46.
[37]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[38]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[39]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[40]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

plaintiff must plead to state a claim."[41]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[42]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[43]  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[44]

Because Butler proceeds *pro se*, his pleadings are to be liberally construed and his second amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[45]  This is particularly true when the *pro se* litigant, like Butler, is incarcerated.[46]

## III.    DISCUSSION

The allegations in Butler's second amended complaint are very similar to those in his first amended complaint.  The details surrounding the January 9, 2021 fire are nearly identical.[47]  In this iteration of his pleading, Butler sues former DOC Secretary John E. Wetzel, former SCI Huntingdon Superintendent Kevin

---

[41]  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[42]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[43]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[44]  *Iqbal*, 556 U.S. at 681.

[45]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

[46]  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

[47]  *See* Doc. 44 ¶¶ 11-20.

Kauffman,[48] Corrections Officer C. Kendrick, Corrections Officer Jennifer Jenkins, and Safety Manager Anthony Scalia.[49]

Butler asserts an Eighth Amendment failure-to-protect[50] claim against all Defendants, a Fourteenth Amendment equal protection claim against Wetzel and Jenkins, and a Section 1983 civil conspiracy claim against all Defendants.[51] He seeks various types of declaratory and injunctive relief, as well as nominal, compensatory, and punitive damages.[52]

Defendants again challenge the pleading sufficiency of nearly every aspect of Butler's lawsuit. After careful consideration, the Court finds—once again—that only Butler's Eighth Amendment claim against Kauffman and Scalia may proceed past the pleading stage.

## A.    Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[53] Rather, a Section

---

[48] Kevin Kauffman passed away on January 7, 2024. *See* Doc. 43 at 2. Baily J. Kauffman, administrator of estate of Kevin Kauffman, has been substituted as a defendant in this case pursuant to Federal Rule of Civil Procedure 25(a)(1). *See* Doc. 58.

[49] Doc. 44 ¶¶ 4-8.

[50] In this Court's March 1, 2024 opinion, it construed Butler's Eighth Amendment allegations as asserting a conditions-of-confinement claim. Upon further reflection, the Court finds that "failure to protect" is a better descriptor of Butler's Eighth Amendment fire-safety claim. These Eighth Amendment claims, nevertheless, have similar elements and standards.

[51] *Id.* ¶¶ 57-69.

[52] *Id.* at pp. 22-23.

[53] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[54]  Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[55]  Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[56]

Butler again fails to plead personal involvement for former DOC Secretary Wetzel, as Butler's allegations evince nothing more than *respondeat superior* liability.  He first asserts that because Wetzel made remarks in 2020 to the state Senate Judiciary Committee regarding the COVID-19 pandemic and prison conditions at the state correctional institutions, he must have knowledge of all the fire-safety issues about which Butler complains.[57]  Specifically, Butler avers that Wetzel testified, "An issue with SCI-Huntingdon is that it is an old facility of an old design.  Opened in 1889, the facility consists of multiple four-tier housing units

---

[54]  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citing *Rode*, 845 F.2d at 1207).

[55]  *Id.* (quoting *Rode*, 845 F.2d at 1207).

[56]  *See id.* at 374 (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

[57]  Doc. 44 ¶ 34.

that have open-bar cell doors[.]"[58]  From this single statement, Butler somehow concludes that Wetzel must have been aware that "there is no ventilation system" at SCI Huntingdon and thus he must also know "about all [the] other asserted deplorable conditions" that Butler alleges.[59]  Such assertions, however, are pure speculation and do not plausibly establish that Wetzel had knowledge of, much less personal involvement in, the purported fire-safety issues and response times about which Butler complains.

Butler also contends that Wetzel—as the Secretary of the DOC—is responsible for the "overall management and operation" of all 26 state correctional facilities, including SCI Huntingdon, and that because of this supervisory position he must be aware of the purported fire-safety issues at SCI Huntingdon.[60]  But claiming that the Secretary of the DOC is aware of every health or safety violation at every state correctional institution merely because of his position is both implausible and explicitly sounds in vicarious liability.  Butler likewise asserts that because Wetzel is responsible for all correctional facilities, that "would also make him responsible for any liability posed by any of the state prisons operating in violation of constitutional law."[61]  This allegation, too, is a quintessential example of vicarious liability, which is not applicable to Section 1983 claims.

---

[58]  *Id.* (quoting Doc. 44-9 at 5).
[59]  *Id.*
[60]  *Id.* ¶ 35.
[61]  *Id.* ¶ 44.

Finally, Butler contends that Wetzel is responsible for unlawful discriminatory treatment in violation of the Fourteenth Amendment because Wetzel is (somehow) aware of the fire-safety issues at SCI Huntingdon and yet has "burdened Butler's fundamental right to be housed in a safe, non-life-threatening prison environment[.]"[62]  Butler claims that he is being treated differently than prisoners at other facilities (*e.g.*, SCI Phoenix, SCI Albion, SCI Coal Township, SCI Fayette, and SCI Benner Township), which allegedly have Butler's preferred fire-safety precautions (master/electronic locking system, functioning fire alarms, adequate smoke exhaust fans, adequately operable fire exit doors, *etc*.).  Yet Butler never explains how the Secretary of the Department of Corrections is responsible for either his placement in SCI Huntingdon or any specific condition of confinement at that facility, and thus he fails to plausibly allege any personal involvement by Wetzel in violating Butler's equal protection rights.

Accordingly, the Section 1983 claims against Wetzel must be dismissed for lack of personal involvement.

### B.    Eighth Amendment Failure to Protect

To state an Eighth Amendment claim against a prison official for deliberate indifference to inmate health or safety, the inmate must plausibly plead that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the

---

[62]    *Id.* ¶ 37.

official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm."[63]  In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."[64]  Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."[65]  Deliberate indifference is a high bar and requires a plaintiff to show that the defendant "recklessly disregard[ed] a substantial risk of serious harm."[66]

Butler's Eighth Amendment claim fails as to multiple Defendants because he has not plausibly alleged knowledge of a substantial risk of harm and deliberate indifference thereto.  First, as thoroughly explained above, Butler has failed to allege personal involvement by Wetzel, so it logically follows that Butler has failed to plead deliberate indifference for a failure-to-protect claim.  That is, Butler has failed to plausibly allege that Wetzel had knowledge of the purported fire-safety issues or that he was deliberately indifferent to the risk they posed to Butler.

---

[63] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).

[64] *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).

[65] *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).

[66] *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citation omitted).

Butler's allegations also fall far short as to Corrections Officer Kendrick. Butler asserts that Kendrick was the "assigned Captain/Shift Commander" during the January 9, 2021 fire and allegedly failed to "immediately evacuate all prisoners" from the unit, thereby "breaching" his official duties.[67]  Butler further contends that Kendrick is responsible for managing "emergency situations quickly and effectively" and failed to fulfill this role on January 9, 2021.[68]

This single allegation is woefully deficient for establishing deliberate indifference by Kendrick.  It does not even rise to the level of negligence, let alone a reckless disregard of a substantial risk of serious harm.  Butler himself admits that after efforts by prison staff to extinguish the fire were initially unsuccessful, all inmates were safely evacuated from the housing unit only minutes after the fire began.[69]  Butler also quotes from SCI Huntingdon's inmate handbook regarding "Fire and Safety Rules,"[70] but his scant allegations against Kendrick do not even reflect a violation of this prison policy.  Moreover, even if Butler had identified a prison policy or regulation that Kendrick had allegedly violated, such a violation, in itself, would not amount to a constitutional infringement.[71]

---

[67]  Doc. 44 ¶ 32.

[68]  *Id.* (emphasis omitted).

[69]  *Id.* ¶¶ 11-16.

[70]  *Id.* ¶ 33.

[71]  *See Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *see Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017); *Williamson v. Garman*, No. 3:15-CV-1797, 2017 WL 2702539, at *6 (M.D. Pa. June 22, 2017); *see also*

Butler also contends that Corrections Officer Jenkins violated his Eighth Amendment rights, but once more his allegations do not come close to plausibly alleging deliberate indifference. Butler avers that Jenkins' involvement "consist[s] of Jenkins' deplorable delay in evacuating the prisoners from the unit," which, according to Butler, took "12 to 15 minutes."[72] As with Kendrick, Butler appears to believe that Jenkins infringed his constitutional rights by violating her official job duties and failing to evacuate prisoners quickly enough. Yet such allegations fall far short of plausibly alleging a reckless disregard of a substantial risk of serious harm. Rather, Butler's own recitation of the facts concedes that Jenkins immediately responded to the fire on the housing unit and took action to protect the health and safety of prisoners. Butler's subjective belief that the evacuation of the housing unit did not occur fast enough (even though he admits it took only "12 to 15" minutes, including initial time spent attempting to extinguish the fire) simply does not amount to a plausible allegation of deliberate indifference to a substantial risk to prisoner health or safety.[73]

Like his first amended complaint, there are only two Defendants for which Butler has plausibly alleged knowledge and deliberate indifference: the late

---

*United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension").

[72] Doc. 44 ¶ 27.

[73] Butler also appears to allege that Jenkins' response to an earlier August 2020 fire made her aware of all the fire-safety issues he is raising in the instant lawsuit. *See* Doc. 44 ¶¶ 28-29. Such allegations are entirely speculative and conclusory and have no grounding in plausibly alleged fact.

Superintendent Kauffman and Safety Manager Scalia. Butler avers that, shortly after the January 9, 2021 fire, another inmate—Rahman Henderson—sent request slips to both Kauffman and Scalia complaining of fire-safety issues (*i.e.*, "lack of adequate ventilation and/or no operable ventilation system, no universal locking system for the cell[s]," and an inadequate "response time from staff"), and that Kauffman and Scalia responded to those requests.[74] Butler also informed Kauffman of his fire-safety complaints through the prison grievance system.

Kauffman, as the (former) Superintendent of SCI Huntingdon, could plausibly have sufficient control over fire-safety response, equipment, and policy. Butler also plausibly alleges that, as part of Scalia's job as Safety Manager, Scalia would be required to be aware of certain conditions and regulations (including those involving fire safety and prevention) and take proactive measures to keep inmates safe.[75] Presumably, the Safety Manager position would involve reviewing fire-prevention building code compliance, evacuation plans, and other fire-safety issues implicated by Butler's lawsuit.[76]

In sum, Butler has plausibly alleged an Eighth Amendment failure-to-protect claim against Kauffman and Scalia. Specifically, his allegations that (a) SCI Huntingdon lacked—among other things—appropriate exhaust fans, adequate

---

[74] Doc. 44 ¶ 23; Doc. 44-2 at 2-3; Doc. 44-3 at 2-3.
[75] *See, e.g.*, Doc. 44-14 at 2-3.
[76] *See id.*

ventilation, "adequately operable fire exits," and proper fire-fighting equipment in the housing units and that (b) several officials who were in charge of the facility and its safety conditions (*i.e.*, the former Superintendent and the Safety Manager) were made aware of these issues but still have not taken any steps to address them, plausibly states an Eighth Amendment claim.  To the extent that Butler asserts such a claim against the other Defendants, those claims cannot survive Rule 12(b)(6) scrutiny for the reasons provided above.

### C.    Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."[77]  To state a Fourteenth Amendment equal protection claim, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]"[78]  An equal protection claim can also be asserted under a "class of one" theory, whereby a plaintiff alleges that a state actor intentionally treated him differently than others who are similarly situated "and there is no rational basis for the difference in treatment."[79]

---

[77]  U.S. CONST. amend. XIV, § 1.
[78]  *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016).
[79]  *Phillips*, 515 F.3d at 243 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Butler asserts that Wetzel and Jenkins violated his Fourteenth Amendment equal protection rights under a class of one theory.[80]  However, as noted above, Butler has not plausibly alleged that Wetzel had any personal involvement in the events that comprise the instant equal protection claim, so only the Fourteenth Amendment claim against Jenkins remains for consideration.

Upon review of Butler's second amended complaint, he has plainly failed to state an equal protection claim against Jenkins.  The gravamen of Butler's Fourteenth Amendment claim is that he and other SCI Huntingdon prisoners are treated differently than prisoners at other state correctional institutions with respect to fire-safety devices and precautions.  Specifically, Butler maintains that the "more contemporary design" correctional institutions have the fire-safety systems that Butler maintains are lacking at SCI Huntingdon, and therefore his equal protection rights are violated by being housed at SCI Huntingdon.

Butler's equal protection claim against Jenkins fails because he has not plausibly alleged that Jenkins had any role in his placement at SCI Huntingdon or in establishing or maintaining the conditions therein.  As the Court observed in its prior opinion, Jenkins, as a mid-level corrections officer, "is simply not the level of official at SCI Huntingdon who could plausibly be responsible for fire-safety mechanisms or to set or enforce fire-safety policy."[81]

---

[80]    Doc. 44 ¶ 63.
[81]    Doc. 36 at 9.

Likely realizing that Jenkins had no control over assignment of prisoners to state facilities or the fire-safety conditions at SCI Huntingdon, Butler takes a different tact in his second amended complaint.  He alleges that Jenkins violated his equal protection rights by responding differently to the January 9, 2021 fire than to an earlier August 2020 fire on the same unit.[82]  But from his own allegations, it is clear that Jenkins responded to two different fires (with disparate causes and circumstances) and each time took action to extinguish the fires and protect the health and safety of the inmates on the CA housing unit.  Butler has not plausibly alleged that he was treated differently than other similarly situated inmates on the CA housing unit.  Nor has he plausibly alleged that the purportedly disparate treatment by Jenkins was intentional and without a rational basis.  In short, Butler has not stated an equal protection claim against Jenkins.

### D.    Section 1983 Civil Conspiracy

To state a claim for Section 1983 conspiracy, a plaintiff must plausibly allege: "'(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States,' with the added gloss under § 1983 that 'the conspirators act

---

[82]  *See* Doc. 44 ¶¶ 38-40.

19

under the color of state law.'"[83]  Notably, to state a conspiracy claim, a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert."[84]

Butler alleges that all Defendants conspired to violate his constitutional rights.  His second amended complaint, like his first, fails to plausibly state a Section 1983 conspiracy.

Butler first appears to assert that because Safety Manager Scalia gave "identical" responses to request slips submitted by inmate Henderson to Kauffman and Scalia, this somehow shows an "agreement" to violate *Butler's* Eighth Amendment rights.[85]  This allegation is both illogical and implausible.  It is illogical because Henderson's request slips and the responses thereto have no connection to Butler, and they were issued to Henderson on January 28, 2021,

---

[83]  *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (alterations in original) (quoting *Barnes Found. v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).

[84]  *See id.* at 295 (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (citing *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984), *aff'd* 769 F.2d 152 (3d Cir. 1985) ("It is a longstanding rule in the Third Circuit that a mere general allegation . . . [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]." (citing *Black & Yates, Inc. v. Mahogany Ass'n*, 129 F.2d 227, 231-32 (3d Cir. 1941)))); *Adams v. Corr. Emergency Response Team*, 857 F. App'x 57, 61 (3d Cir. 2021) (nonprecedential) (explaining that, to state a Section 1985 conspiracy claim, a plaintiff must sufficiently allege "facts and circumstances" that "support the elements of the conspiracy" and show agreement between defendants to deprive a plaintiff of a constitutional right); *Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (nonprecedential) (finding that plaintiff's "conclusory allegation" that defendants "conspired" against him fails to state a claim for civil conspiracy).

[85]  Doc. 44 ¶¶ 41-42.

before Butler's grievance about the purported fire-safety issues was even logged by prison staff on February 4, 2021.[86]  It is implausible because there is nothing conspiratorial or suspect about the Superintendent of the prison delegating a response to an inmate request slip about fire-safety issues to the facility's Safety Manager.

Butler next alleges that Wetzel conspired to violate his Eighth Amendment rights by supposedly knowing about one infrastructure issue at SCI Huntingdon (lack of an "adequately operable ventilation system") and not taking action to correct this issue.[87]  This allegation does not show any type of agreement between Wetzel and any other Defendant, is speculative and conclusory, does not reflect an Eighth Amendment violation, and thus is wholly insufficient to implicate Wetzel in a civil rights conspiracy.

Butler lastly contends that Kendrick and Jenkins "conspired" to violate his civil rights by failing to adequately perform their jobs or speak up about the purportedly deficient fire-safety systems, and thus they were involved in a "conspiracy of silence."[88]  The Court need not expend substantial time on such assertions.  These purely conclusory allegations fail to set forth facts that establish any elements of a civil conspiracy.  They are mere legal conclusions employing

---

[86]  *See* Doc. 44-2 at 2-3; Doc. 44-11 at 2.
[87]  *Id.* ¶ 43.
[88]  Doc. 44 ¶¶ 44-49.

talismanic phrases that are not entitled to the presumption of truth and may be disregarded.

In short, Butler has not plausibly alleged any type of agreement between Defendants to violate his civil rights. His allegations merely parrot his Eighth Amendment failure-to-protect claims against each Defendant, and he attempts to transform them into a civil conspiracy through conclusory and talismanic phrases. Butler's Section 1983 conspiracy claims, therefore, will again be dismissed.

### E.    Administrative Exhaustion

The Prison Litigation Reform Act of 1995 (PLRA)[89] requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.[90] Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.[91] The exhaustion process a prisoner must follow is governed by the contours of the prison grievance system in effect where the inmate is incarcerated.[92]

Pennsylvania's Department of Corrections employs a three-step grievance process that must be completed to properly exhaust administrative remedies in

---

[89]    42 U.S.C. § 1997e *et seq*.

[90]    *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).

[91]    *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

[92]    *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.

most cases.[93]  If informal resolution attempts do not solve the problem, the first

step is to file a written grievance (using form DC-804, Part 1) with the Facility

Grievance Coordinator within 15 working days after "the event upon which the

claim is based."[94]  An adverse decision by the grievance coordinator must be

appealed to the Facility Manager within 15 working days of the initial-review

response or rejection.[95]  Finally, an adverse decision by the Facility Manager must

be appealed to "Final Review" with the Secretary's Office of Inmate Grievances

and Appeals (SOIGA), and again must be submitted within 15 working days of the

date of the Facility Manager's decision.[96]

      The DOC has specific requirements for grievances submitted by inmates.

Those requirements include, among other conditions, that the grievance "be legible

[and] understandable"; "include a statement of the facts relevant to the claim" as

well as "the date, approximate time, and location of the event(s) that gave rise to

the grievance"; that the prisoner "identify individuals directly involved in the

event(s)"; and that the grievance include "the specific relief sought," including

"compensation or other legal relief normally available from a court."[97]

---

[93]  *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T
OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter
"DC-ADM 804").
[94]  DC-ADM 804 § 1(A)(3)-(5), (8).
[95]  *Id.* § 2(A)(1).
[96]  *Id.* § 2(B)(1).
[97]  *Id.* § 1(A)(11).

Generally, failure to exhaust administrative remedies is an affirmative defense, not a pleading requirement.[98]  Nevertheless, when it is apparent from the face of the complaint that a plaintiff has failed to administratively exhaust a claim, dismissal may be appropriate based on "failure to state a claim."[99]  This includes *sua sponte* dismissal for failure to state a claim.[100]

The Court would be remiss if it did not acknowledge that, based on Butler's second amended complaint and the grievance attachments thereto, it appears that he never identified any individual "directly involved in the event(s)," as required by DC-ADM 804.  Butler's grievance and appeals are completely devoid of any name, rank, or other potentially identifying information (like a staff position or job description) that would indicate *who* Butler believed was responsible for the alleged constitutional deprivations.  Indeed, not a single Defendant's name, rank, or position is identified in Butler's grievance filings.  This failure is an additional reason why defendants Wetzel, Jenkins, and Kendrick must be dismissed from this lawsuit.  Butler never informed prison administrators that these officials were

---

[98]  *See Jones*, 549 U.S. at 216.

[99]  *See Ball v. Famiglio*, 726 F.3d 448, 460 (3d Cir. 2013*), abrogated in part on other grounds by Coleman v. Tollefson*, 575 U.S. 532 (2015).

[100]  *See Ray v. Kertes*, 285 F.3d 287, 293 n.5 (3d Cir. 2002) (citations omitted); *Booth v. Churner*, 206 F.3d 289, 290-91, 300 (3d Cir. 2000) (affirming district court's *sua sponte* dismissal where prisoner-plaintiff conceded in his complaint that he did not exhaust administrative remedies); *Pena-Ruiz v. Solorzano*, 281 F. App'x 110, 112 n.3 (3d Cir. 2008) (nonprecedential) ("Although failure to exhaust administrative remedies is generally an affirmative defense to be pleaded by the defendant, we have recognized that a district court has the inherent power to dismiss *sua sponte* a complaint . . . which facially violates a bar to suit.").

responsible for the alleged constitutional violations, even though such identification is clearly required by DC-ADM 804.

Nevertheless, because failure to exhaust administrative remedies is not *unequivocally* established from the pleadings with respect to Kauffman and Scalia,[101] the Court will leave this issue for later stages of this litigation, if raised by Defendants.

## IV.    LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[102]  Further leave to amend will be denied because Butler has failed to cure numerous deficiencies with his pleadings even after "amendments previously allowed."[103]  Butler, in fact, has had three opportunities to attempt to state a claim for relief.  This case, therefore, will continue only as to Butler's Eighth Amendment failure-to-protect claim against defendants Kauffman and Scalia.

---

[101]  There are certain circumstances under which failure to identify a particular prison official can be excused.  The Court takes no position on that issue at this juncture, only noting that failure to exhaust is not unequivocally clear from the face of the second amended complaint as to Kauffman and Scalia.

[102]  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

[103]  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").

One final comment is necessary.  Butler's brief in opposition to Defendants'

instant motion to dismiss raises a single argument.  He contends that Defendants

cannot assert a defense in their motion to dismiss the second amended complaint

that was available but was not raised in Defendants' motion to dismiss the first

amended complaint.[104]  Butler's statement of the law, as far as it goes, is sound.[105]

However, that is not what Defendants did here.  Rather, Defendants

reviewed Butler's second amended complaint and challenged the sufficiency of his

pleading under Federal Rule of Civil Procedure 12(b)(6), just as they did with his

first amended complaint.  Defendants did not, for example, assert a different

defense (*e.g.*, lack of personal jurisdiction or qualified immunity) that was

previously available but not raised in their first motion to dismiss.

Thus, contrary to Butler's contention, Defendants' second motion to dismiss

does not violate Federal Rule of Civil Procedure 12(g)(2).  Indeed, Butler's

argument, if accepted, would have an absurd result: any time a plaintiff filed an

amended pleading following dismissal of a prior complaint pursuant to Rule

12(b)(6) for failure to state a claim upon which relief may be granted, such

amended pleading could not be challenged by a defendant as likewise

---

[104]  *See* Doc. 50 at 3-4.

[105]  *See Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (explaining that defendant who raised sole defense of collateral estoppel in first Rule 12(b)(6) motion could not then assert alternate defense of lack of statutory standing in a subsequent Rule 12(b)(6) motion) (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1384 (3d ed. 2014); FED. R. CIV. P. 12(g)(2); FED. R. CIV. P. 12(h)(2), (3)).

insufficiently pled and would instead have to proceed to later stages of the litigation regardless of its sufficiency.

Additionally, Butler forgets that this Court—under its statutory mandate in 28 U.S.C. § 1915A(a) to screen prisoner lawsuits against government officials—can (and indeed must) *sua sponte* dismiss any claim in Butler's second amended complaint that "fails to state a claim upon which relief may be granted."[106] Consequently, even if Defendants had improperly raised a different defense under Rule 12(b)(6) in their second motion to dismiss (which they did not), the Court must dismiss—on its own volition—any claim in Butler's second amended complaint that fails to state a claim upon which relief may be granted.

## V.    CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). This case will proceed only as to Butler's Section 1983 Eighth Amendment failure-to-protect claim against defendants Kauffman and Scalia.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[106]  28 U.S.C. § 1915A(b)(1).