**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHARIFF BUTLER,<br><br>Plaintiff,<br>v.<br><br>JOHN E. WETZEL, *et al.*,<br><br>Defendants. | No. 4:23-CV-00859<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**SEPTEMBER 11, 2026**

Shariff Butler, a serial prisoner litigant, filed the instant *pro se* Section 1983[1] action, alleging fire-safety issues at the State Correctional Institution, Huntingdon (SCI Huntingdon). Following protracted motion-to-dismiss practice, his claims have been winnowed to Eighth Amendment failure to protect against several current or former SCI Huntingdon officials. Presently pending is Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56 on the remaining Section 1983 claims. Because there is no dispute of material fact regarding the untimeliness of Butler's lawsuit or the fact that he has already litigated the same issues in federal court, the Court will grant judgment as a matter of law in Defendants' favor on all remaining Section 1983 claims.

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I. FACTUAL BACKGROUND[2]

Butler initially filed this case on May 19, 2023.[3] He eventually filed an amended complaint,[4] and then a second amended complaint,[5] which is the operative pleading in this action.

The Court need not rehash the lengthy and litigious procedural history of this case. Suffice it to say that Butler's claims have been significantly narrowed through extensive Rule 12(b)(6) motion practice to the following Section 1983 claims: (1) individual capacity Eighth Amendment failure-to-protect claims against the late Superintendent Kevin Kauffman (through Baily J. Kauffman, administrator of the estate of Kevin Kauffman) and Safety Manager Anthony Scalia regarding alleged fire-safety hazards at SCI Huntingdon; and (2) an official capacity Eighth

---

2 Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* "Statements of material facts in support of, or in opposition to, a motion [for summary judgment] shall include references to the parts of the record that support the statements." *Id.* Defendants filed their properly supported statement of material facts, (Doc. 103), and Butler filed his responsive statement of facts, (Doc. 119). To the extent that any statement of fact is undisputed, the Court may cite directly to Defendants' statement of material facts rather than particular portions of the record.

3 *See generally* Doc. 1. Although both Butler and Defendants assert that Butler filed the instant lawsuit on May 24, 2023, (*see* Doc. 104 at 8 n.1; Doc. 129 at 15), the Court observes that Butler signed and dated his initial complaint on May 19, 2023, (*see* Doc. 1 at pp. 23, 24). The Court will presume that it was given to prison officials for mailing on that same day and thus was filed on May 19, 2023. *See Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011) ("The federal 'prisoner mailbox rule' provides that a document is deemed filed on the date it is given to prison officials for mailing.").

4 Doc. 23.

5 Doc. 44.

Amendment failure-to-protect claim against SCI Huntingdon's current Superintendent, John Rivello, that seeks prospective injunctive relief with respect to the alleged fire-safety hazards.[6]

In his lawsuit, Butler recounts that on January 9, 2021, there was a fire in another cell on his housing block and the prisoners had to be evacuated.[7] Butler alleges that this incident implicated numerous "fire safety hazards" at SCI Huntingdon, including no initial sounding of a fire alarm, understaffing of corrections officers, no "smoke exhaust fans," no "adequately operable" ventilation system, no master electronic locking system for all cells, no fire equipment to tend to "major" fires, and no "adequately operable" fire exits.[8] Butler avers that he inhaled smoke during the evacuation and that his personal television set was damaged.[9] He seeks monetary damages and injunctive relief.

Defendants now move for summary judgement on the remaining Eighth Amendment claims.[10] That motion is fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[11] Summary judgment is

---

6 *See* Doc. 61 at 2 ¶ 3; Doc. 68 ¶ 2.
7 *See* Doc. 44 ¶¶ 11-19.
8 *Id.* ¶ 21.
9 *Id.*
10 *See generally* Doc. 99.
11 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[13]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[14] The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[15] This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[16] A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury

---

[12] FED. R. CIV. P. 56(a).

[13] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[15] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

[16] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

could reasonably find for the [nonmovant]."[17] Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[18]

## III. DISCUSSION

Defendants proffer numerous arguments as to why the Court should enter judgment in their favor on Butler's Eighth Amendment claims. They contend that his claims are barred by the statute of limitations, have already been litigated and are therefore barred by claim preclusion, are procedurally defaulted for failure to exhaust administrative remedies, fail to establish personal involvement, and are precluded by qualified immunity.[19] The Court need only address the first two arguments because they are equally dispositive in this case.

### A. Statute of Limitations

The statute of limitations applicable to Section 1983 claims in Pennsylvania is two years.[20] That two-year period accrues (or begins to run) when the plaintiff "knew or should have known of the injury upon which his action is based"[21] and "the last act needed to complete the tort occurs."[22]

---

[17] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).

[18] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

[19] *See* Doc. 104 at 9. Defendants also argue that any claims for compensatory damages are barred by 42 U.S.C. § 1997e(e) because Butler suffered no personal injury. *See id.* at 9-10, 35-36.

[20] *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); 42 PA. CONS. STAT. ANN. § 5524(7).

[21] *Sameric Corp. of Del. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998) (citation omitted).

[22] *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018).

It is indisputable that Butler has known about the alleged fire-safety hazards at SCI Huntingdon for many years. In fact, he sued SCI Huntingdon officials (including some of the very same Defendants) in 2019 for similar fire-safety defects.[23] In that prior lawsuit, Butler alleged nearly identical "fire safety hazards" as those asserted in the instant case: no sounding of a fire alarm, no master locking system for individual cells, no operational ventilation system, no smoke exhaust fans, no "proper fire equipment," understaffing, and fire exit doors "not functioning properly."[24] It is therefore plainly obvious that Butler knew of the fire-safety issues as early as 2019 (and likely much earlier). Thus, he should have asserted his constitutional rights within the two-year statute of limitations that expired years before he filed the instant case in 2023.[25]

To the extent that Butler contends that his present cause of action did not accrue until the January 9, 2021 fire, he still fares no better. Taking at face value Butler's assertion that his "enforceable claim/right in this case came into existence on January 9, 2021,"[26] he did not file his prison grievance until January 27, 2021,[27] after 18 days had already elapsed on his two-year statute of limitations. Butler

---

23 *See generally Butler v. Wetzel*, No. 4:19-cv-02171, Doc. 1 (M.D. Pa. Dec. 20, 2019). In that lawsuit, Butler alleges that he raised the fire-safety issues in prison grievances filed in December 2017 and March 2019. *See id.*, Doc. 1 ¶¶ 185, 197.

24 *See id.*, Doc. 1 ¶¶ 82, 86-88, 95-96, 99, 107, 185, 197.

25 As explained in more detail below, Butler did in fact assert Eighth Amendment fire-safety claims in his 2019 lawsuit.

26 Doc. 129 at 14, 15.

27 *See* Doc. 103-4 at 8.

then proceeded through the three-step prison grievance process, which tolled his statute of limitations from January 27, 2021, until May 24, 2021, when the Secretary's Office of Inmate Grievances and Appeals denied his final appeal.[28] Butler then had 712 days remaining to file his lawsuit (or until May 8, 2023),[29] but he did not file it until May 19, 2023, almost two weeks too late.[30]

Butler once again appears to misunderstand what "tolling" means. Tolling of a statute of limitations simply pauses or suspends the running of the limitations period; it does not restart the limitations period from zero.[31] Thus, while it is true that the administrative grievance process tolls the two-year statute of limitations, it does not restart the limitations period at zero when the grievance process is completed. So even when using Butler's preferred accrual date (January 9, 2021) and applying the prisoner mailbox rule to establish the date the instant lawsuit was filed (May 19, 2023), Butler's Section 1983 claims—including those that were

---

[28] *See id.* at 2; *Pearson v. Sec'y Dept. of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015) (explaining that "the PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies").

[29] The final day to file his lawsuit, May 6, 2023, fell on a Saturday, thus giving Butler until Monday, May 8, 2023, to file his Section 1983 action. *See* FED. R. CIV. P. 6(a)(1)(C).

[30] *See Butler v. Wetzel*, No. 23-1761, 2024 WL 1007444, at *1 n.2 (3d Cir. Mar. 8, 2024) (per curiam) (nonprecedential) (providing a similar Section 1983 statute-of-limitations calculation that accounts for tolling during administrative exhaustion).

[31] *See Artis v. District of Columbia*, 583 U.S. 71, 80 (2018) ("Ordinarily, 'tolled' . . . means that the limitations period is suspended (stops running) while the claim is *sub judice* elsewhere, then starts running again when the tolling period ends, picking up where it left off."); *cf. Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (noting that equitable tolling doctrine "pauses the running of" a statute of limitations).

previously dismissed at the Rule 12(b)(6) stage—are plainly barred by the two-year limitations period.

Butler does not mention the continuing violations doctrine, although he made that argument in his previous case. As in the prior litigation, that doctrine does not apply. The continuing violations doctrine recognizes that a plaintiff's claim is timely if the defendant's allegedly wrongful actions are part of a continuing practice, the last act of which occurred before the expiration of the limitations period.[32] But the doctrine does not apply when the defendant's allegedly wrongful conduct has a "degree of permanence which should trigger [his] awareness of and duty to assert his[] rights"[33] or "when the plaintiff is aware of the injury at the time it occurred."[34] Here, the alleged fire-safety hazards about which Butler has been complaining for many years have a "degree of permanence" which should (and arguably did) trigger awareness of and a duty to assert his rights.

Finally, Butler is wrong when he contends that he had to wait until the January 9, 2021 fire to sue for injunctive relief to correct the alleged fire-safety hazards at SCI Huntingdon.[35] It is well settled that a plaintiff need not wait until a tragic event occurs before seeking injunctive relief from an allegedly "unsafe, life-

---

32 *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014).

33 *Wisniewski v. Fisher*, 857 F.3d 152, 158 (3d Cir. 2017) (alteration in original) (quoting *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001)).

34 *Montanez*, 773 F.3d at 481 (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.,* 331 F.3d 406, 417 n.6 (3d Cir. 2003)).

35 *See* Doc. 129 at 15-16.

threatening condition in their prison[.]"[36] Butler, who has been alleging since at least 2019 that the at-issue fire-safety hazards create an imminent risk of serious harm, did not need to wait until harm occurred to seek injunctive relief under Section 1983.[37] And even assuming *arguendo* that he did, his lawsuit was still filed almost two weeks too late.

In summary, Butler's Eighth Amendment failure-to-protect claims were most likely filed years out of time, as he knew about the alleged fire-safety hazards at least as early as 2019. But even when using Butler's preferred date of accrual, they are still unequivocally time-barred. Butler does not provide any reason why he waited until May 19, 2023, to file the instant lawsuit. He does not argue for equitable tolling or any other tolling basis that would save his untimely lawsuit. Judgment, therefore, must be granted in Defendants' favor on all remaining claims because those claims were filed beyond the two-year statute of limitations.

**B. Claim Preclusion**

Discussion of the statute of limitations brings to light a separate, dispositive issue: claim preclusion (sometimes referred to as res judicata). As noted above, Butler previously filed a federal Section 1983 lawsuit in this Court in which he

---

36 *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

37 *See id.* at 33-34. As discussed in more depth below, Butler in reality did not wait to assert his Eighth Amendment rights. Rather, he filed grievances in December 2017 and March 2019 and a federal lawsuit in December 2019 that raised the instant fire-safety issues, alleging they violated his rights under the Eighth Amendment and seeking injunctive relief.

raised his Eighth Amendment fire-safety claims. Butler's Eighth Amendment claims were rejected at summary judgment by this Court and on appeal by the United States Court of Appeals for the Third Circuit.[38] He is therefore barred by claim preclusion from relitigating those claims in a subsequent lawsuit.

Claim preclusion requires "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."[39] In evaluating whether these elements exist, courts do not proceed mechanically, but instead "focus on the central purpose of the doctrine[:] to require a plaintiff to present all claims arising out of the same occurrence in a single suit."[40] By doing so, courts "avoid piecemeal litigation and conserve judicial resources."[41] To that end, "[t]he doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought."[42] When considering the third "cause of action" element, "the focus is on the facts rather than the legal theories," because claim preclusion bars a claim that "arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation."[43]

---

38 *See Butler*, No. 23-1761, 2024 WL 1007444, at *1, *2.
39 *Beasley v. Howard*, 14 F.4th 226, 232 (3d Cir. 2021) (citation omitted).
40 *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014)).
41 *Id.* (quoting *Blunt*, 767 F.3d at 277).
42 *Id.* at 342 (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)).
43 *Id.* (quoting *Blunt*, 767 F.3d at 277).

The elements of claim preclusion are satisfied here. Butler filed a previous lawsuit, *Butler v. Wetzel*, No. 4:19-cv-02171 (M.D. Pa.), in which he alleged the same fire-safety hazards asserted in the present case. He sued numerous SCI Huntingdon officials, including the late Kevin Kauffman and then-Safety Manager Robert Bilger in their individual and official capacities, alleging Eighth Amendment violations and seeking monetary damages and injunctive relief.[44] In that case, summary judgment was granted in Defendants' favor, which judgment was affirmed on appeal.

The grant of summary judgment in Defendants' favor and against Butler plainly qualifies as a final judgment on the merits.[45] Therefore, the first element of claim preclusion is met.

The second element is also satisfied. First, Butler sued the late Superintendent Kevin Kauffman (in his individual and official capacities) in both lawsuits. Second, Superintendent John Rivello is in privity with Kauffman based on a legal relationship. That is, Rivello was substituted as a defendant in this action for Butler's official capacity claim pursuant to Federal Rule of Civil Procedure 25(d) when Kauffman passed away.[46]

---

44 *See Butler*, No. 4:19-cv-02171, Doc. 1 ¶¶ 14, 24, 34, 254-57, 259-62.

45 *See Hubicki v. ACF Indus., Inc.*, 484 F.2d 519, 524 (3d Cir. 1973) (citations omitted) (noting summary judgment is a final judgment on the merits for res judicata purposes).

46 *See* FED. R. CIV. P. 25(d) (controlling substitution of a public officer who is a party to an action in an official capacity and who "dies, resigns, or otherwise ceases to hold office while the action is pending").

Finally, in the 2019 suit, Butler sued then-Safety Manager Bilger. Safety Manager Bilger appears to have been replaced by Safety Manager Scalia, who became SCI Huntingdon's Correctional Institutional Safety Manager in December 2018.[47] In this regard, Butler could have, and indeed should have, sued Safety Manager Scalia regarding the alleged fire-safety hazards at SCI Huntingdon as part of his 2019 lawsuit. Any claim that was previously adjudicated on the merits and which is later reasserted against a closely related new defendant (here, Safety Manager Scalia) is barred by nonmutual claim preclusion and application of *Bruszewski v. United States*, 181 F.2d 419 (3d Cir. 1950).[48] As the Third Circuit has explained, when a plaintiff like Butler asserts "essentially the same claim against different defendants," courts have enlarged the scope of res judicata to exceed "any definable categories of privity between the defendants."[49]

The final element of claim preclusion requires the subsequent suit to be based on the same cause of action. That element, too, is satisfied. In his 2019 lawsuit, Butler raised, *inter alia*, a Section 1983 claim alleging a violation of his

---

47 *See* Doc. 103-15 at 4.

48 *See Gambocz v. Yelencsics*, 468 F.2d 837, 840-42 (3d Cir. 1972) (concluding that second lawsuit asserting identical cause of action but adding several new but closely related defendants was barred by res judicata and *Bruszewski* doctrine); *Bruszewski*, 181 F.2d at 422; *see also* 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4464.1, at 702 (3d ed. 2017) (concluding that one "cogent argument in favor of nonmutual claim preclusion is that the party to be precluded should have joined his new adversary in the original litigation").

49 *Bruszewski*, 181 F.2d at 422 & n.6.

Eighth Amendment rights based on a substantial risk of serious harm from the alleged fire-safety hazards at SCI Huntingdon.[50] He sought monetary damages and injunctive relief.[51] That is the same claim he is asserting in the instant case.

Butler challenges only the third element of claim preclusion. He argues that his present Eighth Amendment claim is based on the January 9, 2021 fire and thus it is not the "same cause of action" or "occurrence" as his prior lawsuit.[52] Butler is incorrect.

The only claims that survived Rule 12(b)(6) scrutiny in this case allege Eighth Amendment violations by Kauffman and Scalia, claiming that alleged fire-safety hazards at SCI Huntingdon created a substantial risk of serious harm to inmates. There is nothing specific to the January 9, 2021 fire that is material to the remaining claims and instant Rule 56 motion. Indeed, any constitutional claims regarding the specific conduct of prison officials on January 9, 2021 (*e.g.*, failure to protect or equal protection based on certain Defendants' actions or inactions in response to the fire) have already been dismissed with prejudice from this case.[53] Instead, the only Eighth Amendment claim remaining in the case at bar is identical to one of the Eighth Amendment claims Butler asserted in his 2019 lawsuit:

---

[50] *See Butler*, No. 4:19-cv-02171, Doc. 1 ¶¶ 254-57, 259-62.
[51] *See id.*, Doc. 1 ¶¶ 257, 262, pp. 44-45 ¶¶ (D), (F), (H), (M), (N).
[52] *See* Doc. 129 at 11-14.
[53] *See* Doc. 36 at 9, 11-12, 13; Doc. 60 at 13-15, 18-19.

deliberate indifference by prison officials to alleged fire-safety hazards at SCI Huntingdon. In other words, "the claims asserted here and in the complaint filed in the 201[9] action involve the same underlying facts, the same cause[] of action, and the same demands for relief."[54]

Butler, however, does not get two bites at the apple. In the present case, claim preclusion applies and bars relitigation of the Eighth Amendment claim alleging fire-safety hazards at SCI Huntingdon because that claim has already been decided on the merits in federal court. For this additional reason, summary judgment must be granted in Defendants' favor on the remaining Section 1983 claims.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[54] *Gupta v. Wipro Ltd.*, 749 F. App'x 94, 96 (3d Cir. 2018) (nonprecedential).